```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/28/07
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
ARET M. TASCIYAN,　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Plaintiff,　　　　　　:　　OPINION AND ORDER
　　　　　　　　　　　　　　　　　　　:　　07 Civ. 99 (SAS)
　　　　　- against -　　　　　　　　 :
　　　　　　　　　　　　　　　　　　　:
MARSH USA, INC.,　　　　　　　　　　 :
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Defendant.　　　　　　:
------------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.　INTRODUCTION

　　　　Aret M. Tasciyan filed this action seeking a declaratory judgment regarding his rights under the non-solicitation and non-competition provisions of his employment contract with his former employer, Marsh USA ("defendant" or "Marsh").[1] Specifically, plaintiff sought a declaration that these provisions do not prohibit him from competing for or soliciting clients, with whom he had an established business relationship prior to working for Marsh, after he elected to terminate his employment with Marsh.

---

[1]　　The facts giving rise to this Court's jurisdiction are undisputed. Diversity jurisdiction exists because plaintiff is a citizen and domiciliary of New Jersey, and defendant is a Delaware corporation with its office and principal place of business in New York. The amount in controversy exceeds $75,000. *See* Complaint for Declaratory Judgment ("Compl.") ¶ 2.

Defendant filed an answer and counterclaims on January 31, 2007.[2] Following an evidentiary hearing held on February 5, the Court ruled that plaintiff had the choice of either: (1) refraining from competing against Marsh until the restrictive covenants expired in November 2007 and retaining the approximately $565,000 he received in exchange for agreeing to those covenants; or (2) returning the money and competing freely with Marsh.[3] On February 16, plaintiff advised the Court that he would retain the money and abide by the non-competition and non-solicitation restrictions.[4] Plaintiff now moves for leave to file an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and a stay of the Court's ruling pending appeal. For the reasons discussed below, plaintiff's motion is denied.

## II. BACKGROUND

The following facts are taken from plaintiff's submissions and are

---

[2] *See* Defendant's Answer and Counterclaims. Defendant makes the following three counterclaims: (1) breach of contract, alleging that plaintiff's conduct in resigning breached terms of his Employment Agreement pertaining to resignation protocol; (2) breach of contract, alleging that plaintiff violated his Employment Agreement's post-employment non-competition and non-solicitation restrictions; and (3) unfair competition. *See id.* ¶¶ 16, 25-26, 33.

[3] *See* 2/15/06 Conference Transcript ("2/15/06 Tr.") at 2-7.

[4] Plaintiff initially elected to return the money, but changed his mind when the Court held that defendant could continue to press its claims for damages even if plaintiff returned the money. *See* 2/16/07 Conference Transcript at 2-5.

undisputed.[5] Plaintiff has been working in the marine insurance brokerage business for over twenty years. Before coming to the United States in 1991, he lived and worked in Turkey, where he established a substantial client base consisting of Turkish companies. In 1997, plaintiff started a marine insurance brokerage partnership with other Turkish nationals; the business was called Omni Ltd. and LTO Insurance Intermediaries Services ("OMNI") and had offices both in Turkey and in New Jersey. OMNI eventually came to control approximately seventy percent of the Turkish marine insurance placements throughout the international market.

Marsh is an insurance services firm with offices around the world, including an affiliate office in Istanbul, Turkey. In 2003, Marsh sought to enter the Turkish marine insurance market and in August 2004 Marsh successfully brokered a deal to acquire OMNI's clients – OMNI's "book of business" – by persuading plaintiff and his four OMNI partners to disband their partnership and become Marsh employees. It was understood by all parties that as part of this transaction, OMNI's existing clients would become Marsh's clients.

On or about August 1, 2004, plaintiff signed a five-year Employment Agreement with Marsh. Under that contract, plaintiff was entitled to an annual

---

[5] *See* Plaintiff's Memorandum in Support of Application for a Declaratory Judgment; Declaration of Aret M. Tasciyan.

base salary of no less than $143,588, a minimum annual bonus of $60,000 and deferred stock units that would vest three years from the contract's effective date. The Employment Agreement also contained non-compete and non-solicitation clauses.[6] The non-compete clause provided, in pertinent part, that for twelve months following the termination of his employment with Marsh, plaintiff would refrain from engaging in any competitive employment.[7] The non-solicitation clause provided, in pertinent part, that during the twelve months leading up to any resignation from Marsh, plaintiff would refrain from attempting to "persuade any client of [Marsh] to reduce the amount of business which such client has customarily done [with Marsh]," regardless of whether the relationship between the client and Marsh was "originally established, in whole or in part, through [plaintiff's] efforts."[8]

---

[6] As discussed below, both the non-compete and non-solicitation clauses of the Employment Agreement are restrictive covenants subject to the same legal analysis with respect to their enforceability. It is simply for ease of reference that the Court occasionally refers to them collectively as the "non-compete provisions."

[7] See Employment Agreement ¶ 7(b), Plaintiff's Exhibit to Declaratory Judgment Application ("Pl. Ex.") 2.

[8] Id. ¶ 7(c).

In addition to the Employment Agreement, all of the former OMNI partners, including plaintiff, signed a Performance Incentive and Performance Bonus ("PIPB") Agreement detailing a revenue-sharing structure. The shared revenue was to be paid to the former OMNI partners over five years and would be capped at $5.5 million.[9] The PIPB Agreement also provided that it would terminate automatically upon the resignation of any two signatories.[10] Over the course of plaintiff's employment at Marsh, he received approximately $565,000 under the PIPB Agreement, on top of the salary and bonuses he received under the Employment Agreement.

In October 2005, plaintiff's former OMNI partners – all of whom are based in Turkey – resigned from Marsh. Their resignation was a direct result of Marsh having been directed by the New York State Attorney General to revise certain business practices in ways that obstructed the flow of business in Turkey and were generally disfavored by Turkish clients. Having left Marsh, these individuals recreated their OMNI partnership and began soliciting and competing for the same Turkish clients they had brought with them to Marsh in 2004. In light of these changed circumstances, which included the automatic termination of

---

[9] *See* PIPB Agreement, Pl. Ex. 3.

[10] *See id.*

the PIPB Agreement, plaintiff also resigned from Marsh effective November 15, 2006.[11]

In seeking a declaratory judgment from this Court, plaintiff asserted that although he had not yet engaged in any competitive insurance brokerage business,[12] he wanted to join the new OMNI partnership and begin re-soliciting the client base he developed over the course of his career. To enable him to do this, plaintiff sought a declaration from this Court that the restrictive covenants contained in his Employment Agreement are unenforceable. The Court ruled that under New York's employee choice doctrine, plaintiff had the choice of either (1) returning the approximately $565,000 plaintiff received in PIPB payments to Marsh, and becoming free to compete against Marsh, or (2) keeping the money and remaining subject to the Employment Agreement's non-compete provisions.[13] Plaintiff elected to keep the money, and now seeks leave to file an interlocutory appeal from the Court's ruling.

---

[11] Over the course of their employment with Marsh, plaintiff and his former OMNI partners collectively received approximately $3,000,000 in PIPB payments. *See* 2/5/06 Evidentiary Hearing Transcript ("Evid. Tr.") at 82 (Tasciyan).

[12] *See id.* at 54-66, 69-78 (Tasciyan) (denying, on cross-examination, that he had engaged in competitive business practices since resigning).

[13] *See* 2/15/06 Tr. at 4-5.

## II.  LEGAL STANDARD

### A.  New York Law Regarding Employee Non-Compete Provisions

The Employment Agreement between plaintiff and Marsh contains a New York choice of law provision.  With respect to employee agreements not to compete, "New York has adopted th[e] prevailing standard of reasonableness."[14] Under this standard, articulated by the New York Court of Appeals in *BDO Seidman v. Hirshberg*, a non-compete clause is reasonable only if meets the following three-prong test:  (1) the restrictive covenant is no greater than is required for the protection of the legitimate interest of the employer; (2) the restrictive covenant does not impose undue hardship on the employee; and (3) the restraint on competition is not injurious to the public.[9]  The "violation of any prong renders the covenant invalid."[10]

In applying the reasonableness standard, courts should focus "on the particular facts and circumstances giving context to the agreement."[11]  The New

---

[14]  *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 389 (1999).

[9]  *See id.*

[10]  *Id.*

[11]  *Id. Accord Reed, Roberts Assocs., Inc. v. Strauman*, 40 N.Y.2d 303, 307 (1976).

York Court of Appeals has also stated that the reasonableness standard should be "strictly applied . . . to limit enforcement of broad restraints on competition."[12]

However, in the employment context, there is an important exception to the general rule of reasonableness known as the employee choice doctrine. Under this doctrine, "New York courts will enforce a restrictive covenant without regard to its reasonableness if the employee [was] afforded the choice between not competing (and thereby preserving his benefits) or competing (and thereby risking forfeiture)."[13] Although the doctrine typically comes into play when an employee will be deprived of a future benefit, such as profit sharing, it may also be applied where the benefit has already been paid.[14]

New York courts have not set forth every detail of the employee choice doctrine, but the Second Circuit has noted that

> three strokes are bold and clear. *First*, an employer can rely on the doctrine only if it can demonstrate its continued willingness

---

[12] *BDO Seidman*, 93 N.Y.2d at 389.

[13] *Lucente v. International Bus. Machs. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002). *Accord Post v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 48 N.Y.2d 84 (1979).

[14] *See, e.g., International Bus. Machs. Corp. v. Martson*, 37 F. Supp. 2d 613, 619 (S.D.N.Y. 1999) (employee choice doctrine applicable where employee received a stock option award subject to forfeiture upon violation of non-compete agreement).

> to employ the party who covenanted not to compete. *Second*, when an employee is involuntarily discharged without cause, the employer cannot invoke the benefits of the doctrine . . . . *Third*, the factual determination whether an employee was involuntarily terminated is generally not appropriate for summary judgment.[15]

Thus, where an employee has received, or will receive, benefits conditioned on not competing, the doctrine applies. Accordingly, the restrictive covenant will not be assessed under the *BDO Seidman* reasonableness standard. Instead, the employee must choose between either retaining those benefits or exercising her right to compete.

### B. Interlocutory Appeals Under Section 1292(b)

Appeals of interlocutory district court orders are governed by 28 U.S.C. § 1292(b). Under section 1292(b), the order being appealed must "(1) involve a controlling question of law (2) over which there is substantial ground for difference of opinion," and the movant must also show that "(3) an immediate appeal would materially advance the ultimate termination of the litigation."[16] In addition, leave to appeal is warranted only when the movant demonstrates the existence of "exceptional circumstances"[17] sufficient to overcome the "general

---

[15]  *Lucente*, 310 F.3d at 254-55 (citations omitted).

[16]  28 U.S.C. § 1292(b).

[17]  *Williston v. Eggleston*, 410 F. Supp. 2d 274, 276 (S.D.N.Y. 2006).

aversion to piecemeal litigation"[18] and to "justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment."[19] Interlocutory appeal "is limited to 'extraordinary cases where appellate review might avoid protracted and expensive litigation,' . . . and is not intended as a vehicle to provide early review of difficult rulings in hard cases."[20] The decision whether to grant an interlocutory appeal from a district court order lies within the district court's discretion.[21]

"In regard to the first prong, the 'question of law' must refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record."[22] The question must also be "controlling" in

---

[18] *In re AroChem Corp.*, 176 F.3d 610, 619 (2d Cir. 1999). *Accord Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 95 (2d Cir. 1997).

[19] *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996) (quotation marks and citations omitted).

[20] *In re Levine*, No. 03 Civ. 7146, 2004 WL 764709, at *2 (S.D.N.Y. Apr. 9, 2004) (quoting *German v. Federal Home Loan Mortgage Corp.*, 896 F. Supp. 1385, 1398 (S.D.N.Y. 1995)).

[21] *See, e.g., Swint v. Chambers County Comm'n*, 514 U.S. 35, 47 (1995) ("district courts [have] first line discretion to allow interlocutory appeals"); *In re Kassover*, 343 F.3d 91, 94 (2d Cir. 2003); *DM Rothman Co., Inc. v. Cohen Mktg. Int'l, Inc.*, No. 98 Civ. 7905, 2006 WL 2128064, at *1 (S.D.N.Y. July 27, 2006).

[22] *In re Worldcom, Inc.*, No. M47, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003).

the sense that reversal of the district court's order would terminate the action, or at a minimum that determination of the issue on appeal would materially affect the litigation's outcome.[23]

As to the second prong, the "substantial ground for a difference of opinion" must arise out of a genuine doubt as to whether the district court applied the correct legal standard in its order.[24] The requirement that such a substantial ground exists may be met when "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit."[25] However, it is not sufficient that the relevant case law is "less than clear" or allegedly "not in accord,"[26] or that there is a "strong disagreement among the parties."[27] "A mere claim that a district court's decision was incorrect does not

---

[23] See In re XO Commc'ns, Inc., No. 03 Civ. 1898, 2004 WL 360437, at *3 (S.D.N.Y. Feb. 26, 2004); North Fork Bank v. Abelson, 207 B.R. 382, 389-90 (E.D.N.Y. 1997).

[24] In re Worldcom, 2003 WL 21498904, at *10 (citation omitted).

[25] In re Lloyd's Am. Trust Funds Litig., No. 96 Civ. 1262, 1997 WL 458739, at *5 (S.D.N.Y. Aug. 12, 1997) (citing Klinghoffer v. S.N.C. Achille Lauro, 921 F.2d 21, 25 (2d Cir. 1990)).

[26] North Fork Bank, 207 B.R. at 390.

[27] In re Iridium Operating LLC, Nos. 99-45005, 01-02952, M47, 2003 WL 21507196, at *1 (S.D.N.Y. June 30, 2003) (stating that to demonstrate that there is a substantial ground for difference of opinion a party "must show that the issue is difficult and of first impression and involves more than just a strong

suffice to establish substantial ground for a difference of opinion."[28] Rather, the district court must "analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is *substantial* ground for dispute."[29]

As to the third prong, "'[a]n immediate appeal is considered to advance the ultimate termination of the litigation if that appeal promises to advance the time for trial or shorten the time required for trial.'"[30] Finally, "[i]n practice the courts treat the statutory criteria as a unitary requirement, and the decisions granting and discussing interlocutory appeals under [section] 1292(b) uniformly cite all three of the elements as being present in any particular case."[31]

---

disagreement among the parties") (quotation omitted).

[28] *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, No. 04 Civ. 10014, 2005 WL 3440701, at *2 (S.D.N.Y. Dec. 14, 2005) (citations omitted).

[29] *In re Flor*, 79 F.3d at 284 (quotation omitted). *Accord Marlin v. United States Trustee*, 333 B.R. 14, 20 (W.D.N.Y. 2005).

[30] *Transportation Workers Union of Am., Local 100, AFL-CIO v. New York City Transit Auth.*, 358 F. Supp. 2d 347, 350 (S.D.N.Y. 2005) (quoting *In re Oxford Health Plans, Inc.*, 182 F.R.D. 51, 53 (S.D.N.Y. 1998)).

[31] *Estevez-Yalcin v. The Children's Village*, No. 01 Civ. 8784, 2006 WL 3420833, at *1 (S.D.N.Y. Nov. 27, 2006) (quotation marks and citation omitted).

## III. DISCUSSION

I need not determine whether plaintiff satisfies the first and third prongs necessary for certification of an interlocutory appeal, because plaintiff has failed to persuade this Court that there is a substantial difference of opinion as to any controlling question of law. In arguing that the Court erroneously applied the employee choice doctrine, plaintiff concedes that "the boundaries of the [doctrine] are not clearly defined under New York law."[32] Nevertheless, plaintiff maintains that the Court's ruling "seems to break new ground and go beyond the application [of the doctrine] sanctioned by prior case law."[33]

In particular, plaintiff argues with the Court's application of the doctrine where the restrictive covenants at issue were not accompanied by a forfeiture clause specifically providing that in the event of an employee's violation of those covenants, benefits already paid to the employee would be deemed forfeited.[34] Although plaintiff is correct in observing that forfeiture clauses are

---

[32] Plaintiff's Memorandum of Law in Support of Its Motion to Modify the Court's Order of February 15, 2007 so as to Certify Its Decision for Appeal to the U.S. Second Circuit Court of Appeals and for a Stay of this Case Pending Appeal ("Pl. Mem.") at 5.

[33] *Id.* at 6. *See also id.* at 5-6 (distinguishing prior New York cases).

[34] *See id.* at 5-6.

usually present in cases applying the employee choice doctrine,[35] there is nothing in the case law or any statute dictating that the absence of such a clause, alone, precludes application of the doctrine.[36] It also bears noting that all of the cases on which plaintiff relies for the proposition that a forfeiture clause is a condition precedent to applying the doctrine are predicated on materially distinguishable facts.[37] In *Lenel Systems International v. Smith*, for example, an employee was alleged to have violated a restrictive covenant by working for a competitor.[38] The employee's former employer filed an action claiming that it was entitled to rescind stock options that had been paid to the employee as part of his overall compensation package.[39] Critically, the employee in *Lenel* was never afforded the

---

[35] *See id. See, e.g., Lenel Sys. Int'l v. Smith*, 810 N.Y.S.2d 792 (Sup. Ct. Monroe Co. 2005) (declining to apply the doctrine where no forfeiture clause was contained in the agreements between employer and employee); *Kristt v. Whelan*, 164 N.Y.S.2d 239 (1st Dep't 1957), *aff'd*, 5 N.Y.2d 807 (1958). *See also Tatom v. Ameritech Corp.*, 305 F.3d 737, 744 (7th Cir. 2002) (distinguishing "between provisions that prevent an employee from working for a competitor and those that call for a forfeiture of certain benefits should he do so" and collecting cases).

[36] *But see Lenel*, 810 N.Y.S.2d at 795 (observing that "the employee choice doctrine upheld in [prior cases] presupposes a forfeiture clause").

[37] *See also Estevez-Yalcin*, 2006 WL 3420833, at *4 (denying a 1292(b) motion and noting that the movant's reliance on non-controlling cases with distinguishable facts did not justify immediate appeal).

[38] *See* 810 N.Y.S.2d at 794.

[39] *See id.*

clear "choice" contemplated by the doctrine. In other words, the absence of a forfeiture clause rendered the doctrine inapplicable because it could not fairly be said that the employee freely chose to forfeit his benefit – *i.e.*, that the employee knew full well what the consequences of his decision to violate the non-compete would be.

In sharp contrast to *Lenel*, plaintiff here received a benefit conditioned on restrictive covenants and then, following his voluntary resignation, sought a declaration of his rights to compete, all the while maintaining that he had *yet* to engage in a competitive business. Because this Court ultimately *granted plaintiff the opportunity to choose* between a) retaining his PIPB payments and refraining from competing with Marsh, or b) returning the money and being free to compete with Marsh, plaintiff was presented with both options and was fully informed of the consequences of each. Thus, plaintiff was able to exercise precisely the choice contemplated by the doctrine, and the cases cited by plaintiff are inapposite.[40] For

---

[40] The New York Court of Appeals recently reiterated that an underlying assumption of the employee choice doctrine is that an employee who chooses to leave his employer makes "an informed choice between forfeiting" benefits that were conditioned on a restrictive covenant, "or retaining the benefit by avoiding competitive employment." *Morris v. Schroder Capital Mgmt. Int'l*, 7 N.Y.3d 616, 620-21 (2005). *See also York v. Act Media Inc.*, No. 88 Civ. 8763, 1990 WL 41760, at *2 (S.D.N.Y. Mar. 30, 1990) (in determining whether the employee choice doctrine applies, a critical factor is whether the employee had an opportunity to "ma[k]e a knowing choice between forfeiting a certain benefit or retaining the benefit by staying with the firm"). Moreover, this case is

the same reasons, plaintiff's prediction that the Court's ruling "runs the risk of having the rule of *BDO Seidman* swallowed by the Employee Choice Exception," is mere conjecture, predicated on an overly broad interpretation of this Court's application of the doctrine to the particular facts of this case.[41]

At bottom, plaintiff is merely reasserting his claim that the money he was paid under the PIPB Agreement was a benefit "tied simply to work performance," as opposed to compensation he received in exchange for promising to abide by the restrictive covenants contained in the Employment Agreement.[42]

---

distinguishable from the cases cited by plaintiff because the record here suggests that Marsh remained willing to rehire plaintiff post-termination, thus confirming that plaintiff was adequately presented with the opportunity to make an informed choice, as contemplated by the employee choice doctrine. *See* Evid. Tr. at 103, 106 (Yucesan); *id.* at 112 ("[Marsh] wanted [plaintiff] to stay in the firm and work in the firm . . . after his resignation." (Yucesan)).

[41] Pl. Mem. at 6. Plaintiff also contends that the fact that this precise issue – whether the employee choice doctrine may apply in the absence of a forfeiture clause – has not yet been directly addressed by the New York Court of Appeals or the Second Circuit weighs in favor of certification. *See id.* at 5-6. However, "simply because a question of law has not been authoritatively addressed does not make the question grounds for a substantial difference of opinion." *Williston*, 410 F. Supp. 2d at 277 (citing *Hubbell, Inc. v. Pass & Seymour, Inc.*, No. 94 Civ. 7631, 1995 WL 464906, at *2 (S.D.N.Y. Aug. 4, 1995); *Chamarac Props., Inc. v. Pike*, No. 86 Civ. 7919, 1994 WL 410902, at *2 (S.D.N.Y. Aug. 3, 1994); *American Tel. & Tel. Co. v. North Am. Indus., Inc.*, 783 F. Supp. 810, 814 (S.D.N.Y. 1992)).

[42] Pl. Mem. at 5.

Plaintiff raised this argument in his motion for a declaratory judgment, which the Court fully considered. After holding an evidentiary hearing, however, the Court rejected plaintiff's version of the facts, finding that Marsh indeed had paid plaintiff approximately $565,000 "in exchange for [his] book of business and [his] agreement[] not to compete for that business for 12 months post-employment."[43] Plaintiff's interpretation of the PIPB agreement is no more convincing now than it was then, nor does it raise a question of law appropriate for section 1292(b) certification. Plaintiff's motion for leave to appeal rests solely on his observation that the relevant case law on the doctrine is "less than clear," and it is well-established in this Circuit that such ambiguity does not establish a substantial difference of opinion on the controlling question of law.[44]

---

[43] 2/15/06 Tr. at 5.

[44] *North Fork Bank*, 207 B.R. at 390.

## IV.  CONCLUSION

For the reasons set forth above, plaintiff's motion for leave to seek an interlocutory appeal and for a stay of this Court's February 15 ruling are denied. The Clerk of the Court is directed to close all open motions [Documents 9 and 19]. A conference is scheduled for April 6, 2007, at 3:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
          March 28, 2007

## - **Appearances** -

*For Plaintiff:*

Stephen H. Vengrow, Esq.
Joseph De May, Jr., Esq.
Cichanowicz, Callan, Keane, Vengrow & Textor, LLP
61 Broadway, Suite 3000
New York, New York 10006
(212) 344-7042

*For Defendant:*

Clifford R. Atlas, Esq.
Nicole Quick Saldana, Esq.
Jackson Lewis LLP
59 Maiden Lane, 39th Floor
New York, New York 10038
(212) 545-4012